JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James John Hadges, | No. CV 04-0259-PHX-EHC (DKD) |
| Plaintiff, | **ORDER** |
| vs. | |
| Maricopa County, et al., | |
| Defendants. | |

Plaintiff James John Hadges sued Maricopa County and its sheriff, Joseph Arpaio, for medical negligence and violation of his civil rights under 42 U.S.C. § 1983 (Doc. #1).[1] Defendants filed a Motion for Summary Judgment, to which Plaintiff responded (Doc. ##33, 44). The Court will deny the motion.

**I.    Background**

Plaintiff's claim arose in September 2002, while he was in custody of the Maricopa County Sheriff's Office at the Madison Street Jail (Doc. #1, Am. Compl. ¶ 8). On September 11, 2002, Plaintiff suffered severe injuries to both feet and was transported to the Maricopa Medical Center (MMC) for treatment. His injuries included a calcaneal fracture and metatarsal fractures to the right foot and a dislocation and metatarsal fractures to the left foot (Doc. #40, Attach. A., Wilcox Aff. ¶ 7; Doc. #45, Ex. C). Plaintiff alleged that instead of proceeding with the necessary treatment, the county sheriff's office employees transported

---

[1]The Court dismissed Maricopa County Medical Center and Correctional Health Services from this action upon Defendants' Motion to Dismiss (Doc. #30).

Plaintiff back to the jail facility (Doc. #1, Am. Compl. ¶ 6).

Plaintiff claimed that on October 4, 2002, he saw Dr. Hany Hannallah, who scheduled Plaintiff for surgery the following Monday, October 7 (Doc. #45, Ex. A, Pl. Aff. ¶ 3). As part of his preparation for surgery, on October 6, Plaintiff signed an NPO ("no food by mouth") order ensuring that he did not eat or drink anything prior to the operation (id. ¶ 4; Ex. D). But the next day, jail personnel never transported Plaintiff to the hospital for his surgery (id. ¶ 5).

Between the date of his injury and March 2003, Plaintiff claimed that he repeatedly requested treatment in writing for his injuries. In addition, Plaintiff's criminal attorney wrote letters to the county sheriff's office and the county attorney's office requesting medical attention for Plaintiff (Doc. #1, Am. Compl. ¶ 9).

On March 3, 2003, a Notice of Claim was delivered to Defendants (id. ¶ 10). Plaintiff claimed that the following week, Defendants retaliated against him by taking away his wheelchair and moving him out of the infirmary and into general population, forcing him to walk in leg braces (id.). Although Plaintiff saw healthcare professionals on a few occasions, he alleged that he received no meaningful treatment and that Defendants denied him admittance to a hospital for treatment or surgery (id. ¶ 11).

Following his transfer to the Arizona Department of Corrections (ADC) on March 27, 2003, Plaintiff received surgery on one foot and is awaiting surgery on the other (id. ¶ 12). Plaintiff claimed that as a result of the lack of treatment while in Defendants' custody, he may never walk again (id. ¶ 13). The extent of Plaintiff's injuries has not yet been ascertained (id.).

Plaintiff filed this action in Maricopa County Superior Court (Superior Court Case No. CV2003-17334). Count I of his Amended Complaint alleges medical negligence in violation of state law and Count II alleges a violation of Plaintiff's civil rights under § 1983 (Doc. #1). Defendants filed an answer and a demand for a jury trial (Doc. ##1, 2). The case was then removed to the federal district court (Doc. #1).

Defendants moved for summary judgment on the grounds that (1) Arpaio is not liable

for medical care in the county jail system, (2) Defendants cannot be liable under *respondeat superior*, and (3) Maricopa County was not deliberately indifferent to a serious medical need (Doc. #33). In support of their motion, Defendants submitted the affidavit of Todd Wilcox, Medical Services Director for Maricopa County Correctional Health Services (CHS) since 2004 (Doc. #40).

The Court issued an Order informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #35).[2] In his response, Plaintiff argued that the affidavit supporting Defendants' Statement of Facts and motion is insufficient to support summary judgment (Doc. #44). He further argued that Arpaio is responsible for transporting an injured inmate to a scheduled medical appointment and the failure to do so exhibits deliberate indifference (id. at 3). Finally, Plaintiff maintained that the attempt by the county sheriff's office to cover up its failure to take Plaintiff to the hospital for his scheduled surgery reflects an official policy or custom to deny inmates proper medical care. In support of his response, Plaintiff proffered his own affidavit; copies of medical records from October 6-7 and 23; and a copy of an October 7 e-mail from a Maricopa County nurse (id., Exs. A-F).

On the day the reply memorandum was due—August 14, 2007—Defendants moved for an extension of time and requested to file their reply on or before September 4, 2007 (Doc. #49). The Court had already determined that no further extensions would be granted absent extraordinary circumstances (Doc. #42). Because Defendants failed to demonstrate extraordinary circumstances, the Court granted the motion only in part and ordered that the reply be filed no later than August 21, 2007 (Doc. #50). Defendants did not file their reply until September 4, 2007 (Doc. #52). Defendants failed to comply with this Court's Order and the reply was untimely. Consequently, the Court will strike the reply memorandum.

**II.   Legal Standard**

   **A.   Summary Judgment**

A court must grant summary judgment "if the pleadings, depositions, answers to

---

[2]Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*).

1 interrogatories, and admissions on file, together with the affidavits, if any, show that there
2 is no genuine issue as to any material fact and that the moving party is entitled to judgment
3 as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,
4 322-23 (1986). Under summary judgment practice, the moving party bears the initial
5 responsibility of presenting the basis for its motion and identifying those portions of the
6 record, together with affidavits, that it believes demonstrate the absence of a genuine issue
7 of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th
8 Cir. 2001) (*en banc*). In assessing whether a party has met its burden, the court views the
9 evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles,
10 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the
11 nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

12 If the moving party meets its burden with a properly supported motion, the burden
13 then shifts to the opposing party to present specific facts that show there is a genuine issue
14 for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);
15 see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party presents
16 evidence that, taken by itself, would establish the right to a directed verdict at trial, the
17 motion for summary judgment must be granted in the absence of any significant probative
18 evidence tending to support the opposing party's theory of the case. First Nat'l Bank v.
19 Cities Serv. Co., 391 U.S. 253, 290 (1968); THI-Hawaii, Inc. v. First Commerce Fin. Corp.,
20 627 F.2d 991, 993-94 (9th Cir. 1980). Conclusory allegations, unsupported by factual
21 material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d
22 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise
23 provided by Rule 56, designate specific facts that show there is a genuine issue for trial.
24 Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

25 **B.     Eighth Amendment**

26 In order to state a § 1983 claim for violation of the Eighth Amendment based on
27 inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to
28 evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97,

1  106 (1976).  Indications that a prisoner has a "serious" need for medical treatment include
2  the existence of an injury that a reasonable doctor or patient would find important and worthy
3  of comment or treatment, the presence of a medical condition that significantly affects an
4  individual's daily activities, and the existence of chronic and substantial pain.  McGuckin
5  v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX
6  Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*).

7       "[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary
8  and wanton infliction of pain.'"  Estelle, 429 U.S. at 104-05.  An official is deliberately
9  indifferent if he both knows of and disregards an excessive risk to an inmate's health.
10  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus, to establish deliberate indifference, a
11  plaintiff must establish that the alleged harm was "sufficiently serious" and that the official
12  acted with a "sufficiently culpable state of mind."  Id. at 834 (citing Wilson v. Seiter, 501
13  U.S. 294, 298, 302-3 (1991)).  Mere negligence or medical malpractice does not establish a
14  sufficiently culpable state of mind.  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th
15  Cir. 1980).  But a prisoner does not have to prove that he was completely denied medical care
16  in order to demonstrate deliberate indifference.  Lopez v. Smith, 203 F.3d 1122, 1132 (9th
17  Cir. 2000).  Deliberate indifference may be shown when an official denies, delays, or
18  intentionally interferes with treatment or by the way that a medical professional provides
19  care.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  A difference of medical opinion
20  is insufficient to establish deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058
21  (9th Cir. 2004).

22  **III.  Analysis**

23      **A.  Arpaio's Liability**

24       Defendants' first argument for summary judgment rests on the claim that because
25  Arpaio is not a medical provider, he is not responsible for medical care and therefore cannot
26  be liable for deliberate indifference to a serious medical need (Doc. #33 at 3-4).  Defendants
27  point out that inmate health care is provided by Maricopa County through its subdivision,
28  CHS (id.).  Further, state statute establishes that inmate healthcare responsibility lies with the

1 county (id. at 4, citing Ariz. Rev. Stat. § 11-291)). Thus, Defendants claim that because
2 Arpaio has no relation to CHS or control over its employees, he cannot be liable for a
3 deliberate indifference claim under § 1983.

4 Prison or jail officials who are not physicians may still be liable for deliberate
5 indifference if they intentionally deny or delay access to medical care. Estelle, 429 U.S. at
6 104-05. Also, "a prison official acts with deliberate indifference when he ignores the
7 instructions of the prisoner's treating physician or surgeon." Wakefield v. Thompson, 177
8 F.3d 1160, 1165 (9th Cir. 1999); see also Ortiz v. City of Imperial, 884 F.2d 1312, 1313-14
9 (9th Cir. 1989) (per curiam). A delay in surgery, specifically, can constitute deliberate
10 indifference to a serious medical need if the delay causes significant harm and if the
11 defendant should have known such harm would result from the delay. See McGuckin, 974
12 F.2d at 1059; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.
13 1987).

14 In his opposition to summary judgment, Plaintiff submitted evidence showing that
15 Hannallah, an orthopaedic surgeon, scheduled Plaintiff for surgery on Monday, October 7,
16 2002, and arranged to have Plaintiff transferred to the hospital on the morning of the surgery
17 (Doc. #45, Ex. A, Pl. Aff. ¶¶ 3-4, Exs. C, E). The evidence also demonstrates that Plaintiff
18 was prepped for surgery the day before and the morning of his scheduled operation (id., Ex.
19 E at 2). Plaintiff attests that despite these preparations, jail personnel did not transport him
20 to the hospital on October 7 (id., Ex. A, Pl. Aff. ¶ 5).

21 Thus, Plaintiff's claim is that the failure of the jail staff to transport Plaintiff to the
22 hospital for surgery pursuant to his physician's orders caused a denial or delay of treatment.
23 Plaintiff's evidence supports this claim against Arpaio for deliberate indifference, despite his
24 non-medical role.

25 Defendants submit no evidence to suggest that Arpaio and jail staff were *not*
26 responsible for transporting Plaintiff to his scheduled surgery. Moreover, Defendants did not
27 file a reply to Plaintiff's affidavit in which he averred that jail personnel failed or refused to
28 transport him to surgery (Doc. #45, Ex. A, Pl. Aff. ¶ 5). They also failed to reply to

Plaintiff's response memorandum, which argued that Arpaio refused to allow Plaintiff to have surgery pursuant to a policy or custom to deny medical care to inmates when treatment and the accompanying costs can be deferred to the ADC upon transfer of custody (Doc. #40 at 6-7). When a defendant does not object to a plaintiff's declarations or otherwise controvert the matters described therein in a reply memorandum, those facts are deemed undisputed. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2722, at 384-85 (3d ed. 1998) ("[a]s is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged") (footnotes omitted). The lack of any evidence to support Defendants' first claim for summary judgment leaves a genuine issue of material fact regarding whether Arpaio failed or refused to transport Plaintiff to surgery. As such, summary judgment on the ground that Arpaio is not a medical provider is unwarranted.

### B.    *Respondeat Superior*

Defendants next argue that they are entitled to summary judgment because Plaintiff failed to sue any individual who directly deprived him of a constitutional right; thus, because Defendants cannot be liable in a § 1983 action under *respondeat superior*, they are entitled to summary judgment (Doc. #33 at 4).

Defendants are correct that § 1983 will not impose liability on supervising officers under a *respondeat superior* theory of liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-94 (1978). Supervisory liability under § 1983 exists, however, if the official implements a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations and quotations omitted). Likewise, a supervisor may be liable for the actions of a subordinate if the supervisor had knowledge of violations and failed to act to prevent them, Taylor, 880 F.2d at 1045, or if the supervisor has "set in motion a series of acts by others . . . , which he knew or reasonably should have known, would cause others to inflict the constitutional injury." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted). To state a claim for supervisory liability, a

§ 1983 plaintiff must establish a causal connection between a supervisor's act or omission and the constitutional deprivation. Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

As stated, Plaintiff alleged that Arpaio enforced a policy or custom to deny medical care to inmates when treatment and costs could be shifted to the ADC (Doc. #40 at 6-7). Plaintiff submitted the copy of a medical report reflecting an examination by Dr. Cherney on October 23, 2002 (Doc. #45, Ex. C). In this report, Cherney stated that a guard informed him that Plaintiff had refused to be transferred to the hospital that Monday for surgery (id.). But Plaintiff attested that he never refused transportation or surgery, nor did he ever sign a waiver, which is required if a detainee refuses a transport (id., Ex. A, Pl. Aff. ¶¶ 5-6). Plaintiff alleges that this misinformation by a guard—who is unidentified—is part of Defendants' attempt to cover-up the failure to transport Plaintiff for surgery and is indicative of Defendants' policy or custom to deny prisoners and detainees proper medical care (Doc. #44 at 6). Defendants did not respond to this argument. Consequently, there is a material dispute as to the existence of a policy denying or delaying medical care to inmates. Summary judgment on this basis will be denied.

**C.   Deliberate Indifference**

Defendants contend that Maricopa County was not deliberately indifferent to Plaintiff's serious medical needs (Doc. #33). Defendants appear to concede that Plaintiff's injuries amounted to a serious medical need (see id. at 5, referring to Plaintiff's serious medical needs). Even without a concession, Defendants' evidence, which documents Plaintiff's multiple fractures, the risks in avoiding surgery, and the need for Plaintiff to use a walker, is sufficient to demonstrate that Plaintiff's condition constituted a serious medical need (Doc. #40, Attach. A., Wilcox Aff. ¶¶ 7-8, 10).

To establish the absence of deliberate indifference, Defendants submit the affidavit of Dr. Wilcox, Medical Advisor for CHS (Doc. #40, Attach. A). Wilcox's affidavit is based on a review of Plaintiff's medical records (id., Wilcox Aff. ¶ 4). Wilcox attested that following the October 4, 2002, visit to the MMC, in which Hannallah arranged for surgery, other MMC orthopedic physicians advised CHS of their concerns that surgery was not a good

- 8 -

1  option for Plaintiff due to psychiatric and medical reasons (id. ¶ 10). Wilcox further attested
2  that at Plaintiff's October 23, 2002, orthopedic visit, physicians determined that the timing
3  was too late for surgery to be beneficial; instead, followup and use of a walker were
4  prescribed. Plaintiff received treatment and evaluation at regular intervals through March
5  2003, when he was transferred to the ADC (id.). Wilcox concludes that Plaintiff was
6  provided appropriate medical care in a timely fashion (id. ¶ 11).

7  Plaintiff argues that Wilcox failed to identify what records were reviewed when he
8  determined that Plaintiff's medical care was appropriate (Doc. #44 at 3). There were no
9  medical records attached to Wilcox's affidavit. Plaintiff asserts that the medical records
10 provided to him by Defendants were lacking and if those were the same records relied upon
11 by Wilcox, the information is simply insufficient to support Wilcox's conclusions (id.).
12 Plaintiff also informed the Court that, to date, he has not received requested missing medical
13 records from Defendants, including Plaintiff's complete medical records from Hannallah (id.
14 at 4, 6 & n. 3).

15 The Ninth Circuit has explained that, "if documentary evidence is cited as a source
16 of a factual contention, Rule 56(e) requires attachment," even if the affidavit is also based
17 on personal knowledge. School Dist. No. 1J, Multnomah County, Ord. v. AcandS, Inc., 5
18 F.3d 1255, 1262 (9th Cir. 1993). Given Wilcox's averment that his affidavit testimony is
19 based entirely on a review of the medical records, and Plaintiff's objection thereto, the failure
20 to provide any attached medical records weighs against consideration of the affidavit (Doc.
21 #40, Attach. A, Wilcox Aff. ¶ 4).

22 Even if Wilcox's affidavit is considered by the Court, Plaintiff has nonetheless met
23 his burden to designate facts that show a genuine issue for trial. Plaintiff proffers a copy of
24 an undated e-mail faxed from Cynthia Wright, a nurse with CHS, to Dr. Gregorio on October
25 7, 2002 (the day surgery was scheduled to occur) at 1:37 p.m. (Doc. #45, Ex. F). Gregorio's
26 title or position is not provided. The e-mail states that Wright spoke with a number of
27 physicians about Plaintiff's need for surgery, and that they all agreed that Plaintiff was no
28 longer a candidate for surgery. Wright identifies the physicians to whom she spoke; the list

does not include Hannallah (id.). Plaintiff notes there are no medical records or any other records documenting these alleged conversations. Plaintiff submits that this e-mail was sent in an effort to cover up the failure of jail personnel to transport Plaintiff to his scheduled surgery (Doc. #44 at 5).

Plaintiff also argues that this purported decision that he no longer needed surgery conflicts with steps that were taken to prepare Plaintiff for surgery just hours before the scheduled operation (Doc. #44 at 5). He submits a copy of the CHS Nursing Assessment notes recorded at 7:55 a.m. on October 7, 2002—the morning of Plaintiff's surgery (Doc. #45, Ex. E). The nurse noted that Plaintiff "remains NPO for surgery. Denies numbness, tingling . . . Instruct on deep breathing & coughing post-op & verbalizes an understanding" (id.). And finally, Plaintiff attests that none of the physicians who allegedly concluded—in contradiction to his treating physician's recommendation—that Plaintiff no longer needed surgery, ever spoke to or examined Plaintiff after he met with Hannallah (Doc. #45, Ex. A, Pl. Aff. ¶ 7).

The Court notes that this alleged decision by other physicians to cancel the surgery on the day it was scheduled to occur, appears to conflict with the October 23, 2002, medical record referred to above. There, the examining physician recorded that surgery was not performed because, according to the unnamed guard, Plaintiff refused to be transferred to the hospital (Doc. #45, Ex. C). As already indicated, Plaintiff submits his sworn statement that he never refused surgery or transport (Doc. #45, Ex. A, Pl. Aff. ¶ 5).

In sum, there is a dispute between the parties as to the reason for the cancellation of Plaintiff's surgery. Plaintiff alleges that he did not receive the necessary surgery until after his transfer to the ADC, more than five months later (Doc. #1, Am. Compl. ¶ 12). Viewing the evidence in the light most favorable to Plaintiff, an inference could be drawn that his surgery scheduled for October 7, 2002, was denied, delayed, or interfered with by CHS. For this reason, Maricopa County will be denied summary judgment.

//

//

**IT IS ORDERED:**

(1) Defendants' Reply to Response to Motion for Summary Judgment (Doc. #52) is **stricken**.

(2) Defendants' Motion for Summary Judgment (Doc. #33) is **denied**.

DATED this 5th day of September, 2007.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge